### CLARK v. DUNCANSON.

No. 9736—Opinion Filed Sept. 7, 1920.

(Syllabus by the Court.)

1. **Taxation—Validity of Tax Sale—Failure to Notify Taxpayer of Amount of Taxes.**

The provisions of the act of the Legislature approved March 22, 1911 (Sess. Laws 1910-11, p. 263), declaring that it shall be the duty of the county treasurer, on or before November 1st, to notify by mail, postage prepaid, each taxpayer whose name appears on his record of the amount of his taxes, and when the same will become due and delinquent, is mandatory, and the absence of such notice nullifies the sale of the taxpayer's land for taxes and penalty.

2. **Quieting Title—Issues and Proof—Title of Plaintiff.**

The plaintiff in an action to quiet title to land must allege and prove that he is the owner of either the legal title or the complete equitable title. Unless plaintiff has the title, it is immaterial to him what title defendant claims.

3. **Taxation—Validity of Tax Deed—Limitation of Actions.**

Under section 7419, Rev. Laws 1910, providing that "no action shall be commenced by the holder of the tax deed or the former owner * * * to recover possession of the land which has been sold and conveyed for nonpayment of taxes, or to avoid such deed, unless such action shall be commenced within one year after the recording of such deed," neither party can successfully maintain, against a plea of such statute of limitation, an action not commenced within one year after the recording of the tax deed.

4. **Same—Limitation as to Defenses—Suit Begun Within One Year.**

Section 7419, Rev. Laws 1910, contemplates that if either the former owner or the tax deed purchaser desires to litigate the validity of the tax deed, and one or the other of them commence an action, either to recover possession of the land or to quiet title, and in such action the plaintiff's petition clearly tenders to the defendant the validity of the tax deed as the issue in the case, and such suit is commenced within one year from the recording of the tax deed, the statute of limitation stops running against all defenses which may be interposed by the defendant.

5. **Same.**

Statutes of limitations apply generally to actions, and not defenses. Held, that where

the plaintiff is in possession claiming title under a tax deed, and commences an action against the former owner within 12 months after the recording of his tax deed, to quiet title, the former owner may challenge the validity of the tax deed by answer filed more than 12 months after the tax deed was recorded.

## 6. Same—Pleading—Cross-Petition as Counterclaim.

Plaintiff commenced an action within 12 months from the recording of his tax deed, to quiet title; he made the former owner a party defendant; the defendant, after the expiration of 12 months from the recording of the tax deed, filed an answer, entitling the same "Answer and Cross-Petition," in which he assailed on several grounds the validity of the tax sale and tax deed, and prayed judgment against the plaintiff for possession and damages. Held, that the so-called cross-petition is a counterclaim within the meaning of section 4746, Rev. Laws 1910, and within the clause therein declaring that a "counterclaim shall not be barred by the statute of limitations until the claim of the plaintiff is so barred."

Error from District Court, Pawnee County; Conn Linn, Judge.

Action by E. M. Clark against John C. Duncanson to quiet title. Judgment for defendant, and plaintiff brings error. Affirmed.

Plaintiff in error, as plaintiff below commenced this action on November 3, 1915, against defendant in error, defendant below, to quiet his title to 80 acres of land, and alleges that he is the owner of the legal and equitable title to the land described; that he is, and had been for more than a year prior thereto, in the quiet and peaceful possession of the 80 acres involved, "under and by virtue of a certain tax deed," a copy of which is attached to Exhibit "A". Plaintiff also alleges that the defendant claims some estate or interest in the land adverse to the plaintiff under a certain real estate mortgage, the exact nature of which is unknown to him, but is known to defendant, but that the mortgage under which defendant claims is not a valid lien by reason of the foreclosure proceedings, etc. Plaintiff prays that he be adjudged the absolute owner in fee of the legal and equitable title to the land, and that defendant be forever barred and enjoined from setting up or making any claim to any title, right, interest, or estate in said land, and that his, plaintiff's, title be quieted against the defendant's claims. Plaintiff's tax deed was executed by the county treasurer on February 18, 1915, and recorded February 19, 1915. It will thus be seen that plaintiff commenced his action in about nine months after the registration of his tax

deed. The record does not show when service of process was obtained upon defendant, nor when he filed any pleadings other than his answer and cross-petition filed on September 6, 1916, more than one year after the registration of plaintiff's tax deed. Defendant in his answer and cross-petition pleads a general denial and avers that he is the owner of the 80 acres covered by the tax deed, as purchaser at a mortgage foreclosure sale made May 25, 1910. Defendant also assails the validity of the tax deed upon several grounds, one of which is this: That the county treasurer did not notify defendant by mail, postage prepaid, of the amount of his taxes and when the same would become due and delinquent, as required by the act of the Legislature approved March 22, 1911, (Sess. Laws of 1910-11, p. 263), and that the sale is void because the treasurer added 18 per cent. penalty, and sold the land for the taxes, plus the penalty.

Clark & Armstrong, for plaintiff in error.

Thurman S. Hurst and Redmond S. Cole, for defendant in error.

RAMSEY, J. (after stating the case as above). We will dispose of the points argued in inverse order.

1. The 80 acres were sold on November 4, 1912, for the 1911 taxes, plus "penalty, interest, and costs, due and unpaid thereon and delinquent on said real estate," as recited in the tax deed itself. The county treasurer bid the land in for $12.47, and certificate of purchase was issued bearing that date, which plaintiff subsequently acquired and on which he obtained his tax deed. The provision in the act of the Legislature approved March 22, 1911, (Sess. Laws of 1910-11, p. 263), declaring that it shall be the duty of the county treasurer on or before November 1st, to notify by mail, postage prepaid, each taxpayer whose name appears on his record of the amount of his taxes, and when the same will become due and delinquent, is mandatory, and the absence of such notice nullifies the sale of the taxpayer's land for taxes and penalty. The sale of a tract of land for a legal tax, plus an illegal penalty, is no foundation for a tax deed, and upon a showing of such fact a tax deed issued on such sale will be canceled and set aside. Williams v. McGill, 69 Oklahoma, 169 Pac. 1074; Cooley on Taxation (3rd Ed.) vol. 2, pp. 954 and 958; Miller v. State, 70 Oklahoma, 173 Pac. 67; Trimmer v. State ex rel. Rennie, 43 Okla. 152, 141 Pac. 784; State ex rel. v. Baker, 43 Okla. 646, 143 Pac. 668; City National Bank v. Gayle, 55 Okla. 301, 155 Pac. 552. The notice required by said act of March 22, 1911, was not given. Defendant claims the tax deed is

void on its face, but we pass over that question without discussion or decision, and for the purpose of this case we assume, without deciding, that it is not void on its face.

2. Plaintiff filed a reply to defendant's answer and cross-petition, setting up the statute of limitations of one year contained in section 7419, Rev. Laws 1910, and contends that, inasmuch as defendant did not file his answer and cross-petition until after the expiration of one year from the recording of the tax deed, the cause of action set up in his cross-petition is barred by said statute of limitations: Plaintiff contends that the cross-petition is, in effect, the commencement of a new suit, and not having been commenced within one year from the registration of the tax deed, it is barred although set up as a defense to plaintiff's action to establish title under his tax deed commenced within about nine months after the tax deed was recorded. Defendant contends that his answer and cross-petition constitute a counterclaim and under section 4746, Rev. Laws 1910, is not barred by the statute of limitations until the plaintiff's claim is likewise barred. Under section 4927, Rev. Laws 1910, as amended by the act of the Legislature approved January 25, 1911 (Sess. Laws 1910-11, p. 25), the plaintiff commenced this action for the purpose of determining "the adverse estate or interest" defendant had in the land. Plaintiff alleges in his petition that he is the owner of the legal and equitable title, and bases his claim of title on the tax deed exhibited with his petition. Plaintiff, therefore, bases his right to a judgment on two things, to wit: (a) Possession, and (b) title under the tax deed. He, therefore, presented to the defendant the clear-cut issue as to whether or not he, plaintiff, obtained title under the tax deed. Unless plaintiff has title, he has no title to quiet. In an action to quiet title, the plaintiff must allege and prove that he is the owner of either the legal title or the complete equitable title. Whether the defendant has any title is immaterial to the plaintiff unless the plaintiff has title. Plaintiff must recover on the strength of his own title, and not on the want of title in the defendant. 17 Ency. Pl. & Pr., pp. 326 to 331; Mason et al. v. Gates, 82 Ark. 294, 102 S. W. 190; Spalding v. Hill, 47 Okla. 621, 149 Pac. 1133; Clark v. Holmes, 31 Okla. 164, Ann. Cases 1913-D, 385; Lewis v. Clements, 21 Okla. 167, 95 Pac. 769; Blanchard v. Reed, 67 Oklahoma, 168 Pac. 664. At the time plaintiff commenced this action defendant had a good defense, as shown by the ruling in the first paragraph of this opinion. Did he lost that by failing to answer until after the expiration of the one year's time within which to commence an action to recover possession of the land sold under the tax sale? Section 7419, Rev. Laws 1910, provides that "no action shall be commenced by the holder of the tax deed or the former owner * * * to recover possession of the land which has been sold and conveyed by deed for nonpayment of taxes, or to avoid such deed, unless such action shall be commenced within one year after the recording of such deed." That statute bars a suit not commenced within one year by the holder of the tax deed or by the "former owner" to recover possession, or by the former owner to avoid such tax deed. Neither party can successfully maintain against that statute of limitations such an action not commenced within one year after the recording of the tax deed. The defendant did not commence this action, but the plaintiff commenced it within the year, and when the plaintiff commenced the action within the year, he tendered to the defendant the clear-cut issue as to whether or not his tax deed was valid, and having presented that issue to the defendant within a year from the recording of the deed, the defendant had a right to meet the issue and litigate the validity of the deed, although the defendant may not have filed his answer or pleading until after the end of the year. What that statute contemplates is that if either of the parties desires to litigate the validity of the tax deed, one or the other of them must commence the action within one year after the recording of the deed. The purpose of a statute of limitation is to put titles in repose. Section 7419 is a statute of limitation evidencing the purpose to cut off actions involving the validity of the tax deed unless the action is commenced by one or the other of the parties within 12 months after the deed is recorded. It is, therefore, our conclusi n that if either party, that is, the owner of the land prior to the tax deed, or the holder of the tax deed, commences an action to recover possession or to avoid the tax deed within 12 months from the recording of the deed, the running of the statute is arrested as to the defendant, that is, the other party. This construction fully satisfies the purpose of the statute, and is in harmony with the settled rule that the statute of limitations does not run against a mere defense. Short statutes of limitations barring actions to recover land sold for taxes are not construed with that liberality exhibited towards the general statutes of limitations. Cooley on Taxation (3rd Ed.) vol. 2, pp. 1066, 1088. The statute of limitations applies to actions, and not defenses. Thus, in Hart v. Church, 126 Cal. 471, 77 Am. St. Rep. 195, the court held that

the defense based on the allegation that the contract relied upon by plaintiff was obtained by fraud was not barred by the statute of limitations prescribing the time in which actions must be commenced for fraud or mistake. The court said:

"It is also true that where a party seeks relief upon the ground of fraud or mistake the action must be commenced within three years after the discovery of the facts constituting the fraud or mistake, but a different case is presented where the party who has procured the fraudulent contract, or who seeks to take advantage of it, asks to have it declared valid or to enforce its executory terms, and is thus himself asking affirmative relief. The three years' statute of limitations does not bar the defendant in such a case from objecting to the validity or the enforcement of the contract upon the ground of fraud. It is not incumbent upon one who has thus been defrauded to go into court and ask relief, but he may abide his time and when enforcement is sought against him excuse himself from performance by proof of the fraud. Of course, in such a case he incurs the risk of defeat by the intervention of the rights of innocent parties."

In State v. Tanner, 45 Wash. 348, 88 Pac. 321, the plaintiff commenced an action in mandamus to compel the mayor and city council to levy a tax in an amount sufficient to pay relator's claims. The relator showed that certain paving contracts were made with the city, that warrants were issued, that the city refused to pay them, and that judgments were taken against the city, which the city also refused to pay or levy a tax to pay. The city pleaded that the judgments were obtained by fraud, but the statute of limitations had run against the city's remedy to set aside the judgments for fraud. The court held that so long as the cause of action survived, the equitable defenses thereto also survived, and that although the defendant's cause of action on account of fraud was barred by the statute of limitations, the relator's judgment did not become by age alone immune from the infirmities under which it originated. See, also, Weakley v. Meriweather, 156 Ky. 304, 160 S. W. 1055; Wood on Limitations (4th Ed.) vol. 2, secs. 282, 284-a to 284-b, inclusive; Snow v. Gallup (Tex) 123 S. W. 222; Nelson v. San Antonio Tr. Co. (Tex.) 142 S. W. 146; Blackshear v. Dekle, 120 Ga. 766, 48 S. E. 311; Hall v. O'Connell, 51 Ore. 225, 94 Pac. 564.

In Butler v. Carpenter, 163 Mo. 597, 63 S. W. 823, the plaintiffs commenced an ejectment action, in answer to which defendant alleged that 20 years prior thereto the land was purchased by plaintiff's ancestor under an agreement by which defendant paid half the consideration, said ancestor taking the title

in trust for defendant, to the extent of an undivided one-half interest. Plaintiffs filed a demurrer to the answer on the ground that the defendant's alleged equitable title was outlawed and barred by the statute of limitations. The defendant not only pleaded his equitable title as a defense, but closed his answer with a prayer for a decree divesting plaintiffs of one-half of the legal title and awarding same to defendant. The court said:

"The third ground of demurrer—'That defendant's alleged equitable title is stale, and barred by the statute of limitations'—may also be disposed of by the simple suggestion that the sole purpose of the statute of limitations, by its very language, is to bar actions, and not to suppress or deny matters of defense, whether equitable or legal; and that, too, when, as in this case, the equitable defense is accompanied by a prayer for affirmative relief. The purpose of the statute is to quiet the assertion of old, stale, and antiquated demands, but it has never been thought that its intended object was to go further, and to deny a just and meritorious defense, whether the facts of that defense had their birth in the first, tenth, or twentieth year before the call for the assertion of those facts was made necessary by some hostile claim, demand or proceeding. A ground of defense never becomes stale or barred by the statute of limitations, but grows in strength and force as the limitation period against a right of action widens. The statute of limitations may be used by a defendant as a shield for his protection or defense, but is never to be turned upon him as a sword with which to compass his defeat."

The judgment of the trial court in sustaining the demurrer to the defendant's answer was reversed by the Supreme Court, and the case remanded for a trial on the facts.

A careful consideration of section 7419, Rev. Laws 1910, convinces us that the legislature did not intend to cut off defenses not made within a year after the recording of the tax deed. Considering section 7419 in the light of the authorities cited and rules therein announced, it clearly appears that all the legislature intended was to bar litigation over tax titles unless an action to recover the land or avoid the tax deed is commenced by one or the other of the parties, that is, the holder of the tax deed or the owner of the land, within one year from the recording of the tax deed.

If the defenses to an action to quiet title commenced by the holder of the tax deed are not barred by the statute of limitations, it seems clear that a mere judgment dismissing plaintiff's suit and not awarding defendant possession, thus leaving plaintiff in possession, renders nugatory the very defenses the law

holds to be good. Thus we would have the law saying to a defendant, "Your defenses are good, they are not barred by the statute of limitations,. and from your defenses it appears plaintiff has no valid title, and while I find you have the title and plaintiff has no title, I can do nothing except leave the plaintiff in possession." This would be to keep the word of promise to the ear, while breaking it to the hope.

It was not necessary for the defendant to ask for cross-relief in order to defeat the plaintiff, See 17 Ency. Pl. & Pr. 354. In actions to quiet title or of ejectment the title can be determined upon the petition and answer without a cross-petition, unless the defendant seeks to enforce some equitable right. 6 Standard Proc. 300; Bacon v. Rice, 14 Idaho, 107, 93 Pac. 511; Johnson v. Taylor, 150 Cal. 201, 10 L. R. A. (N. S.) 818.

3. But the defendant's answer and cross-petition is a counterclaim within the meaning of section 4746, Rev. Laws 1910, providing that a "counterclaim shall not be barred by the statute of limitations until the claim of the plaintiff is so barred." While the Code of Civil Procedure was intended to simplify pleading and practice, it fell far short of making itself entirely clear as to what it means to include in the term "counterclaim." We will not review the authorities defining counterclaim as used in the Code of Civil Procedure, because, like the charms of Cleopatra, "Age cannot wither nor custom stale her (their) infinite variety." If the affirmative relief asked by defendant be against the plaintiff and arises (1) out of the contract, or (2) the transaction set forth in plaintiff's petition as the foundation of his claim, or (3) connected with the subject of the action, it is a counterclaim and not barred by the statute of limitations unless the plaintiff's claim is also barred. The third subdivision of section 4745, Rev. Laws 1910, authorizes the defendant to set forth in his answer as many grounds of defense, counterclaim, set-off, and for relief, as he may have, irrespective of whether they be denominated legal or equitable, or both. We think the new matter by way of defense and cross-petition set up by defendant in this case is clearly "connected with the subject of the action," and therefore falls within the meaning of counterclaim as used in section 4746, Rev. Laws 1910. We agree with Pomeroy that the "subject of the action" denotes the plaintiff's **principal, primary right** to enforce or maintain his action or controversy. The primary right here is the title, if any, acquired by plaintiff under the tax deed, and he puts that forth in his petition as his primary right to have and to hold the posses-

sion and title to the land. If we treat the land as the "subject of the action" the defendant's defense, his claim of title,. is certainly as closely "connected with the subject of the action," that is, the land, as plaintiff's tax deed is "connected with the subject of the action," that is, the land. The whole litigation revolves around the validity of plaintiff's tax title, and not around defendant's title. See Pomeroy's Code Remedies (4th Ed.) secs. 651 and 647.

In Gillenwater v. Campbell, 142 Ind. 529, 41 N. E. 1041, plaintiff commenced an action to quiet title, to which the defendant filed an answer and cross-petition alleging that he was the owner of and entitled to the immediate possession of the land and that plaintiff, without right, was in possession. Defendant prayed for possession and damages, which the court held was a counterclaim properly pleaded with a general denial. The Indiana Supreme Court said:

"Tested as a cross-demand for possession and damages, it must be determined whether the relief demanded 'is any matter arising out of on connected with the cause of action,' as required by the Code (Rev. St. 1894, sec. 353; Rev. St. 1881, sec. 350), for, as said in Standley v. Insurance Co., 95 Ind. 254, 'There must be some legal or equitable connection between the matters pleaded as a counterclaim and the matters alleged in the original complaint.' The matters pleaded 'might be the subject of an action in favor of the' appellant, but could not properly be considered as tending 'to reduce the plaintiff's claim.' The question returns, therefore, are the matters pleaded 'connected with the cause of action' alleged in the complaint? They relate to the same land. They depend upon the ownership, by the plaintiff or the defendant, of the land. The cause of action pleaded in the complaint and that alleged in the first paragraph of cross-complaint have such intimate legal connection as permitted them to have been united in one action, if such causes concurred in the same person. Rev. St. 1894, sec. 279 (Rev. St. 1881, sec. 278). It is the policy of the law that, when litigation must be resorted to for the adjustment of disputed rights, every question logically connected with such disputed rights shall be determined and put at rest in one action. We conclude, therefore, that the appellant might properly demand at least the possession of the land, the title to which was put in issue by the complaint. If he had sought, in this paragraph, to quiet his title as against the appellee, he certainly would have been permitted, in connection with that demand, to seek possession and damages. Instead of a prayer to quiet title, he alleged his ownership, and demanded possession and damages. This, we think, he had a right to do."

In Eagan v. Mahoney (Colo.) 134 Pac. 156, the court held that a cross-complaint by one defendant against another, asking for the removal of a cloud on the title to the land, is a counterclaim under the Code of Civil Procedure. The court said:

"Counsel's claim that the defendant Mahoney's cross-bill or cross-complaint cannot be sustained as a cause of action against the defendant Eagan, for the purpose of quieting title as against him, because the same is not defensive, and therefore not a counterclaim such as the Code provides, cannot be upheld. The counterclaim or cross-complaint mentioned in sections 56 and 57, Mills' Ann. Code, is equivalent to a cross-bill in equity practice. Allen v. Tritch, 5 Colo. 222, 225; Travelers' Ins. Co. v. Redfield, 6 Colo. App. 190, 40 Pac. 195. And we think it cannot be successfully asserted that under the circumstances of this case the cross-bill is not 'connected with the subject of the action.' The fact that the affirmative relief sought by this cross-complaint is in the nature of an original bill, seeking the court's aid beyond the purposes of defense, to the original complaint, does not take the plea out of the provisions of the Code concerning counterclaims. Crisman v. Heiderer, 5 Colo. 589, 594. The relief prayed for in the cross-complaint was necessary to a complete determination of the matters in litigation, and the plea was therefore permissible, even as against a codefendant in the action. Derbyshire v. Jones, 94 Va. 140, 142. 26 S. E. 416; Whittemore v. Patten (C C.) 84 Fed. 51, 56; Perkins Oil Co v. Eberhart, 107 Tenn. 409, 64 S. W. 760, 765; Krueger v. Ferry, 41 N. J. Eq. 432. 5 Atl. 452, 455."

See. also, Taylor v. Wilson (Ky.) 206 S. W. 865; Woodruf v. Garner, 27 Ind. 4; Kollock v. Kaiser (Wis.) 73 N. W. 776; General Electric Co. v. Williams (N. C.) 31 S. E. 288; McCormick Harvester Mach. Co. v. Hill (Mo.) 79 S. W. 745.

Cross-petitions are analogous to and based on the old equitable principles governing ordinary cross-bills. 6 Standard Proc. 296. The cross-bill under the old equity practice was a mode of defense ancillary to the original suit, and the original bill and cross-petition constitute but one cause. 6 Standard Proc. 261. The Code of Civil Procedure in this state makes no reference to cross-petitions, but they are authorized by sections 4745 and 4746, Rev. Laws 1910. It does not matter whether it is called cross-petition, cross-complaint, or counterclaim (Taylor v. Wilson [Ky.] 206 S. W. 865); if it is a counterclaim within the meaning of section 4746, Rev. Laws 1910, the running of the statute of limitations is arrested by the commencement of the plaintiff's action. Cooper v. Gibson. 69 Oklahoma, 170 Pac. 220; Mowatt v. Shidler, 66 Oklahoma, 168 Pac. 1169;

Staufer v. Campbell, 30 Okla. 76, 118 Pac. 391; McKay v. Hall, 30 Okla. 773, 39 L. R. A. (N. S.) 658, 120 Pac. 1108; Advance Thresher Co. v. Doak, 36 Okla. 532, 129 Pac. 736. The statutory declaration in section 4746, Rev. Laws 1910, that such set-off or counterclaim shall not be barred by the statutes of limitations until the claim of the plaintiff is barred is confirmatory of the general rule in the absence of such statutory provision. See Wood on Limitations (4th Ed.) vol. 2, sec. 284. In O'Keefe v. Dillenbeck, 15 Okla. 437, relied upon by plaintiff. it does not appear that the plaintiff commenced his action before the statute of limitations had barred the cause of action set up by defendant in his cross-petition. We have examined the Kansas cases cited by plaintiff and find ourselves unwilling to apply the rule therein announced to this case. It is unnecessary to pass upon the other points raised by the defendant against the validity of the tax deed.

The judgment of the trial court is affirmed.

RAINEY, C. J., HARRISON, V. C. J., and KANE, PITCHFORD, and JOHNSON, JJ., concur.