## STOLFA v. GAINES et al.

No. 18158. Opinion Filed Nov. 12, 1929.

Rehearing Denied Jan. 7, 1930.

Potterf, Gray & Poindexter and Thomas Norman, for plaintiff in error.

H. A. Hicks, for defendants in error.

ANDREWS, J. The parties hereto appear in the same order as they did in the trial court, and for convenience they will be referred to as plaintiff and defendant.

The plaintiff filed a petition seeking to quiet the title to the property involved in the action from certain claims of the defendant. Defendant answered and filed a counterclaim alleging title in the defendant, and the plaintiff replied by pleading the statute of limitations. When the case was called for trial, plaintiff dismissed his action and the defendant proceeded with his claim.

The trial court found that the deed issued pursuant to the guardianship sale was void, and held that the plea of the statute of limitations, as a defense of the plaintiff against the claim of the defendant in the answer and counterclaim, was not available.

Under the view we take of this case, many of the contentions of the plaintiff are immaterial, and we will confine our discussion to the contention which we think is decisive of this case.

This record shows that plaintiff's predecessor in title procured two guardian's deeds to the land involved in this action. The first of these was executed and delivered on February 9, 1916, and it was recorded on that date. The second was recorded on December 20, 1916. This suit was filed on January 24, 1924. The defendant was born on April 14, 1895. Each of these deeds was of record more than seven years prior to the bringing of this suit. The defendant reached his majority more than seven years prior to the filing of this suit. The plaintiff's predecessor in title went into possession of the property in February, 1916, and continued in the quiet, peaceable, uninterrupted, and adverse possession thereof, making improvements thereon and claiming it as her own, until she sold the same on July 31, 1918, to this plaintiff. At that time this plaintiff went into possession of the property and continued in the quiet, peaceable, uninterrupted, and adverse possession of the property, claiming the same as his own, from the day he purchased it until the trial of this cause. He not only remained in possession, but paid the taxes on the property and made improvements on it and at no time did the defendant make any claim against him for rent or for possession of the property prior to the filing of this suit.

Under section 1496, C. O. S. 1921, no action for the recovery of any estate, sold by a guardian, can be maintained by the ward, or by any person claiming under him, unless it is commenced within three years next after the termination of the guardianship, or when a legal disability to sue exists by reason of minority or otherwise at the time when the cause of action accrues, within three years next after the removal thereof. This record shows that the plaintiff's petition was filed long after the right of action of the defendant had been barred by the provisions of this section, if this section is applicable.

Under section 183, C. O. S. 1921, an action brought by a ward for the recovery of real property which has been sold by a guardian upon an order of court directing such sale, or for the determination of any adverse right or interest therein, must be brought within five years after the date of the recording of the deed made in pursuance of the sale. This record shows that that five-year period expired prior to the filing of the petition by plaintiff. If this section is applicable, the right of the defendant to maintain his action is barred.

Section 184, C. O. S. 1921, extends the time for the bringing of such action by a person under a legal disability to a period within two years after the disability has been removed. This action was not brought until after the expiration of two years after the removal of the disability of the defendant. If this section is applicable, the right of the defendant to maintain his action is barred.

Notwithstanding the invalidity of the guardian's deeds (we express no opinion as to their validity), the same are sufficient to set the statute of limitation in operation. Dodson v. Middleton, 38 Okla. 763, 135 Pac. 368; Group v. Jones, 44 Okla. 344, 144 Pac. 377; Glory v. Bagby, 79 Okla. 155, 188 Pac. 881, and Walker v. Hatcher, 109 Okla. 283, 231 Pac. 88, and many other decisions of this court.

The defendant contends that his cause of action was not barred by reason of the proviso in section 274, C. O. S. 1921, as follows:

"Provided, that either party can plead and prove a set-off or counterclaim of the proper

nature, in defense of the liability sought to be enforced by the other party, and it shall not be necessary that such set-off shall exist as between all parties plaintiff and defendant in such suit, but any party may enforce his set-off or counterclaim against the liability sought to be enforced against him. Such set-off or counterclaim shall not be barred by the statutes of limitations until the claim of the plaintiff is so barred."

Plaintiff contends that this proviso is not applicable for the reason that plaintiff dismissed his cause of action, with the consent of the court and without any objections from the defendant, and the claim of the defendant thereby ceased to be a counterclaim, if it ever was one, and became an original action which was not protected by this proviso. The dismissal was authorized by and in pursuance of section 665, C. O. S. 1921.

We cannot agree with that contention. Plaintiff filed a suit, procured service upon the defendant, and thereby brought the defendant into court. Defendant was justified in setting up his claim to the property involved in the action. The right of the defendant to assert that claim, notwithstanding the dismissal of the action by the plaintiff, is specifically provided by section 665, Id. If the claim of the defendant was valid when filed, it is not deprived of its validity by the action of the plaintiff in dismissing his action. The questions thus presented are: Did the cause of action set forth in defendant's "answer and counterclaim" exist at the time of the filing of the plaintiff's petition in this action, or was it barred by the statute of limitations?

In our opinion the title "answer and counterclaim" lends nothing to the instrument. It must be construed according to the contents thereof. State ex rel. Morrison v. City of Muskogee, 70 Okla. 19, 172 Pac. 796. Section 665, Id., provides that plaintiff may dismiss his action "* * * after the filing of a petition of intervention or answer praying for affirmative relief, but such dismissal shall not prejudice the right of the intervener or defendant to proceed with the action." It is immaterial, under the statute, whether the claim of the defendant is a counterclaim or not. The defendant has a right thereunder to proceed with his action after the dismissal by plaintiff, if it prays for affirmative relief. The fact that the affirmative relief sought by the answer is in the nature of an original bill seeking the court's aid beyond the purpose of defense, does not take the answer out of this provision of the Code. The answer of the defendant attacks the validity of the guardian's deeds pleaded by the plaintiff and denies that the defendant's rights are barred by the statute of limitations. It prays for a cancellation of the guardian's deeds. We think that the action of the plaintiff in dismissing his suit in no wise affected the right of the defendant to proceed with the prayer for affirmative relief under the allegations of his answer.

If the claim of the defendant was not germane under the provisions of sections 273 and 274, C. O. S. 1921, the remedy of the plaintiff was to demur or to move to strike or dismiss the same as not germane to the issue. National Life Ins. Co. v. Hale, 54 Okla. 600, 154 Pac. 536; Moore v. Continental Gin Co., 70 Okla. 202, 173 Pac. 809, and Armstrong-Byrd & Co. v. Crump, 25 Okla. 452, 106 Pac. 855. This was not done in this case. Plaintiff dismissed his action, leaving the answer of the defendant, praying affirmative relief, on file. The defendant had the right to proceed with his claim notwithstanding the dismissal by the plaintiff.

Plaintiff filed a reply to the claim of the defendant and asserted that it was barred by the statute of limitations. Defendant contended that his answer constituted a counterclaim which, under section 274, Id., may be asserted until the claim of the plaintiff is barred by the statute of limitations. It seems to be the uniform rule that if the claim of the defendant is a counterclaim within the meaning of section 274, Id., the running of the statute of limitations as to the claim was arrested by the commencement of the plaintiff's action. Cooper v. Gibson, 69 Okla. 105, 170 Pac. 220; Advance Thresher Co. v. Doak, 36 Okla. 532, 129 Pac. 736. That was the holding of this court in Clark v. Duncanson, 79 Okla. 180, 192 Pac. 806, and the court in that case applied the rule stated in 37 C. J. 1081, 1082, as follows:

"The better rule seems to be, where defendant's claim in set-off was an existing debt not barred by the statute of limitations at the time plaintiff's action was begun, it will be a valid set-off, although the statutory period may have elapsed before the filing of the answer setting it up."

In that case the plaintiffs sought to establish a tax deed, and the petition was filed within the time provided by the statute for the bringing thereof. The defendant filed his answer attacking the tax deed after the expiration of the period provided by the statute, and the plaintiffs contended that the defendant could not assert the invalidity of the tax deed because the answer was not filed until after the expiration of the period

provided by the statute for attacking tax deeds.

In our opinion, that case does not determine the law applicable to the facts in this case, for the reason, among others, that in this case the period fixed by the statute of limitations in which the defendant could assert his claim had expired before the filing of the petition of the plaintiff. This distinction is plainly pointed out in that portion of that opinion wherein the court distinguished cases cited by the plaintiff therein and said that an examination of those cases discloses that "* * * it does not appear that the plaintiff commenced his action before the statute of limitations had barred the cause of action set up by defendant in his cross-petition." We think this distinction should be kept clearly in mind. The running of the period fixed by the statute of limitations bars the claim of the defendant asserted in an answer praying for affirmative relief notwithstanding the claim of the plaintiff set out in his petition is not barred by the statute of limitations, except only in those cases wherein the claim of the defendant constitutes a set-off or counterclaim, in which event the same is not barred until the claim of the plaintiff is barred. Hurst v. Hannah, 107 Okla. 3, 229 Pac. 163.

In so far as the answer seeks to have the title of the plaintiff, based upon the guardian's deeds, canceled and the guardian's deeds and the proceeding leading thereto vacated, set aside, and held for naught, the same undoubtedly constitutes a counterclaim.

There is another issue in this case and that is the title asserted by the plaintiff to the property by prescription. In Clark v. Duncanson, supra, the court said:

"The whole litigation revolves around the validity of plaintiff's tax title, and not around the defendant's title."

The plaintiff in that case, in order to recover, was required to establish the validity of his tax title, and the defendant had the right to contest the validity of the plaintiff's tax title notwithstanding the expiration of the period provided by the statute for the contesting of tax titles. The situation there would have been materially different if the period provided as a limitation had expired prior to the filing of the plaintiff's petition. In the case at bar, in his petition, the plaintiff pleaded as a basis for his title that "If defendant ever had any right, title, interest, equity, claim, or estate in and to said above-described property, same has been barred by the statute of limitations." No motion or demurrer was directed at this petition and no attempt was made to have this allegation made more definite and certain, and in the absence of such, we think it, with the other allegations of the petition, was a sufficient allegation of title in plaintiff by prescription.

This was an action to quiet the title to property, and the necessary requirements of a petition therefor, under section 466, C. O. S. 1921, were stated in the petition. The necessary allegations of a petition to quiet title are allegations that the plaintiff is the owner in fee, and in the actual peaceable possession of the property in controversy, describing it; that the defendant claims an interest therein adverse to plaintiff, and that the claim of defendant is a cloud upon plaintiff's title. Hurst v. Hannah, supra; Ziska v. Avey, 36 Okla. 405, 122 Pac. 722. Measured by this rule the plaintiff's petition stated a cause of action.

The title to property in Oklahoma is acquired, first, by occupancy. Section 8552, C. O. S. 1921. Section 8554, C. O. S. 1921, provides:

"Occupancy for the period prescribed by Civil Procedure, or any law of this state as sufficient to bar an action for the recovery of the property, confers a title thereto, denominated a title by prescription, which is sufficient against all."

The allegations of plaintiff's petition are sufficient to assert title to this property under the provisions of section 8554, Id.

The fact that Oklahoma is a new state undoubtedly accounts for the failure of this court to determine prescriptive rights, but in other states title by prescription, as provided by section 8552, Id., is judicially recognized. It is sometimes called title by adverse possession. The rule is stated in 1 R. C. L. 187, as follows:

"Modern statutes of limitation operate, as a rule, not only to cut off one's right to bring an action for the recovery of real property which has been in the adverse possession of another for a specified time, but also to vest the disseisor with title. These enactments rest on a wise public policy, which regards litigation with disfavor, and aims for the repose of conditions which the parties have suffered to remain unquestioned long enough to indicate their acquiescence therein. The intention is not to punish one who neglects to assert his rights, but to protect those who have maintained the possession of land, for the time specified by the statute, under claim of right or color of title. It has also been said that the doctrine of maturing title by adverse possession, under color of title, is that where one,

in the exercise of ordinary care, is induced to enter upon and improve land because he has some written evidence of title that would naturally induce a layman to believe that it vested in him what it professed to pass, it would be unjust to enforce the right of another who brings no action until the end of the statutory period.

"It is conceded by all the authorities that the adverse possession of land, maintained for the statutory period, vests the possessor with title thereto, not only as against strangers, but also as against the former owner thereof, as effectively as if there had been a formal conveyance. The law presumes a conveyance on grounds of public policy, and this includes the presumption of all that is essential to give a conveyance effect; as, for instance, registration. It has been claimed, however, that it is unnecessary to resort to presumption, because the mere fact that adverse possession has been maintained for the statutory period is, in itself, sufficient to meet every legal requirement for the protection of the new owner. Thus it has been said that the title so gained may be used by the disseisor either as a weapon or as a shield, as his necessities may demand, in any court or proceeding. The right, as well as the remedy, of the disseisee is destroyed

—and in 2 C. J. 251, as follows:

"While it is true that in one state at least there are special statutes under which possession for the statutory period bars the remedy merely, in the United States and Canada the doctrine is almost universal that possession for the statutory period not only bars the remedy of the holder of the paper title, but also extinguishes his title and vests title in fee in the adverse occupant. It may be noted in passing that in very few of the statutes is there any express declaration that the title of the true owner shall be deemed extinguished by adverse possession for the statutory period and title vested in the adverse occupant. The title acquired by adverse possession is a title in fee simple and is as perfect a title as one by deed from the original owner, or by patent or grant from the government, or by descent or devise, and the original owner is absolutely divested of all title. When once acquired it continues until conveyed by the possessor or until lost by another adverse possession"

—is amplified in Thompson on Real Property, section 2516, as follows:

"Adverse possession for sufficient time to bar an action to recover real estate confers title, against any title whatsoever, as effectively as if the original owner had made a formal conveyance to the possessor. The title is as full and complete as if the possessor had always held the undisputed title of record. The rule rests upon the theory

that, when possession and use are long continued, they create a presumption of lawful origin; that is, they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property. It is held that there is no superiority in a title derived from a grant to that acquired by possession under color of title for the period of limitations, although the latter title is derived by force of statute. The title thus acquired is respected in courts of equity as well as in courts of law, and the title is such as will support an action to remove a cloud therefrom; or to maintain trespass against one claiming under a senior grant, but without possession. The effect of the possession of the adverse holder for the statutory period is not only to bar the remedy of the owner of the paper title, but to divest his estate and vest it in the party holding adversely."

We deem it unnecessary to cite all of the cases cited by these text-writers in support thereof. An examination of them discloses the correctness of the rule announced. We desire, however, to call attention to a few of the decided cases holding that the owner of a title by prescription may have the same quieted, even against a former owner of the land, and to one Oklahoma decision. We cite Freeman v. Funk, 85 Kan. 473, 117 Pac. 1024, 46 L. R. A. (N. S.) 487; Normant v. Eureka Company, 98 Ala. 181, 39 Am. St. Rep. 45; Green v. Couse, 127 N. Y. 386, 24 Am. St. Rep. 458; Arrington v. Liscom, 34 Cal. 365, 94 Am. Dec. 722; Cannon v. Stockmon, 36 Cal. 535, 95 Am. Dec. 205; Winthrop v. Benson, 31 Me. 384, 52 Am. Dec. 618; Leffingwell v. Warren, 67 U. S. 599, 17 L. Ed. 261, and Sharon v. Tucker, 144 U. S. 533, 36 L. Ed. 532.

Title by prescription, under sections 8553 and 8554, Id., was considered by this court in McMann v. McMann, 123 Okla. 26, 252 Pac. 1093, wherein it was said:

"Under section 8554 it is to be noted that occupancy for any period fixed by the law of this state as sufficient to bar an action for the recovery of the property confers title by prescription sufficient against all.

"The instant case does not fall within the provisions as to the limitations of real actions contained in the first and second subdivisions of section 183, C. O. S. 1921, but does fall within the fourth subdivision thereof, which provides as follows: 'An action for the recovery of real property not hereinbefore provided for within 15 years.'

"In a proper case falling within the first and second subdivisions of the limitation statute referred to, coupled with open, notorious, and adverse occupancy, title by prescription would arise after five years, inde-

pendently of the provisions contained in said subdivisions 1 and 2, because section 8554 makes it so, but section 8554 is broad enough to give rise to title by prescription when occupied openly and notoriously for 15 years under the fourth subdivision of the limitation statute cited above.

"In Mehard et al. v. Little, 81 Okla. 1, 196 Pac. 536, this court had occasion to consider section 8554, supra, as it applied to a void sale of land under execution, where possession had been taken under the deed issued pursuant thereto and held continuously for more than five years prior to the commencement of the action.

"In the cited case occupancy under subdivision 1 of the limitation statutes was held to have ripened into a complete title by prescription as against the true owner. The same conclusion must follow when section 8554 is applied to subdivision 4 of that statute.

"As was said by the Supreme Court of Kansas in Goodman v. Nichols, 23 Pac. 960, quoting with approval this statement from Washburn on Real Property, vol. 3 (5th Ed.) page 149:

"'When the bar of the statute becomes complete, however destitute of the color of title such occupancy may have been under, to the extent that it was actual, visible, and continuous, a title by prescription arises in the adverse occupant. This title is in all respects equal to a conveyance in fee. The only distinction which can be recognized between title acquired under the statute of limitations by adverse occupancy, under claim and color of title, and without such claim or color, is that in the latter case title will only be coextensive with actual, visible, and continuous occupancy, while in the former color of title may, by construction, embrace lands only part of which was thus actually occupied.'

"Continuing, the court said, in the body of the opinion:

"'An adverse possession of real estate for the statutory period, held in good faith under a deed, will confer titl,e however defective the deed may be, and although the judicial proceedings and sale under which it is issued were void, and will do so even if the deed is void on its face.'

"While the judgment of the divorce court was absolutely void and afforded no color of title, it did have the effect of giving a bona fide character to the possession of the defendants in error, and if the occupancy thereafter maintained was coextensive with the entire tract and continued uninterruptedly for more than 15 years, title by prescription would arise in favor of the defendants in error."

The contention of the defendant that the statute of limitations had not run against him was therefore only a defense to the plaintiff's claim of title by prescription. That contention did not constitute a counterclaim or a set-off. In Hurst v. Hanna, supra, this court said:

"In Stone v. Cass, 34 Okla. 5, 124 Pac. 960, this court held that a primary right and its infringement are the elements of a subject of action. In the instant case the plaintiffs' suit was not based on the contract with Hurst, or any rights growing out of the same, or the infringement thereof. The subject of action in the instant case was the right of the plaintiff to hold title to her real estate, free from harrassment by the assertion of title on the part of the defendants asserting an interest in such property. The defendants' claim under the contract with Hurst was not connected with this subject of action, but defendants' rights depended upon obtaining affirmative relief under the contract. In Clark v. Duncanson, 79 Okla. 180, 192 Pac. 806, the defense pleaded in the answer and cross-petition was held to be a counterclaim under the above statute because it was connected with the subject of action, but in that case plaintiff's right was based upon title under a tax deed, and the adverse claim of the defendants and the counterclaim was based on the contention that the tax deed was void, and hence the defense was connected with the subject of action. In the body of that opinion the court said:

"'The whole litigation revolves around the validity of plaintiff's tax title, and not around the defendant's title.'

"In the instant case the litigation turns around the rights acquired by the defendants under the contract and only by enforcing such rights do the defendants have any defense to the cause of action stated in plaintiff's petition. It is our opinion that the answer did not plead a counterclaim within the provisions of section 274, supra, and that the statute of limitations barred the right to the cause of action defendants sought to plead in answer and cross-petition, and that the demurrer was properly sustained."

Under the statutes herein cited the plaintiff's occupancy of the property, as shown by the record in this case, was sufficient to give him a title to the property by prescription. He was not required to show that all the requisites of law had been complied with in the probate proceedings in order to make his title perfect.

"'* * * Color of title, even under a void and worthless deed, has always been received as evidence that the person in possession claims for himself, and of course, adversely to all the world." Pillow v. Roberts, 13 How. 472,

and an unbroken line of decisions following it.

With the record of the deeds, even though they were void, and the entry of possession, the statute of limitations began to run. At the expiration of five years therefrom, in the absence of a disability, this possession ripened into a title in the plaintiff. The extension of the period of the statute by reason of the disability also expired, and the title of the plaintiff to the property, by reason of his occupancy, became valid and perfect.

When the plaintiff instituted a suit to quiet his title as against the claims of the defendant he did not, by so doing, surrender that title. It remained with him, subject to be defeated by any valid defense of the defendant. The defense offered was limited to an attack upon the guardianship proceedings. It was immaterial whether the guardianship proceedings or the guardian's deeds were valid or void. In Leffingwell v. Warren, 2 Black, 599, the Supreme Court of the United States said:

"It is immaterial whether the sale and the deed be void or valid: It is sufficient that a sale has been made and the deed recorded, to bring the statute into activity, and after the lapse of the period limited to entitle the purchaser, and those claiming under him, to its protection.

"The lapse of the time limited by such statutes not only bars the remedy, but it extinguishes the right, and vests a perfect title in the adverse holder. It tolls the entry of the person having the right, and consequently, though the very right be in the defendant, yet he cannot justify his ejecting the plaintiff."

It is contended by the defendant that sections 8552, 8553, and 8554, C. O. S. 1921, are not in force in Oklahoma by reason of their having been adopted from Dakota. There is no merit in this contention. If the rule contended for ever applied, it ceased to apply with the adoption of the Revised Laws of Oklahoma, at which time these sections were adopted as a part of our law along with the other provisions thereof.

The primary right of the plaintiff in the case at bar was to hold the title to the real estate acquired by prescripton, free from harrassment by the assertion of title on the part of the defendant. Defendant's answer denied the title by prescription and asserted the invalidity of the guardian's deeds. The record shows that no attempt was made to dispute the fact that the plaintiff had occupied the property for the period prescribed

by the laws of Oklahoma as sufficient to bar the right of the defendant to recover the property. There was, therefore, no evidence which would warrant the court in holding that the plaintiff had not acquired title to the property by prescription. If the plaintiff had the title to the property by prescription, it was immaterial what action the court took with reference to the guardian's deeds or the guardianship procedure. The claim of the defendant, attacking the guardian's deeds and guardianship procedure, did not constitute a counterclaim against the claim of the plaintiff by prescription.

If the claim of the defendant was not a counterclaim or set-off, then the statute ran notwithstanding the claim of the plaintiff had not been barred by the statute of limitations. As to the plaintiff's contention that he had the title to the property by prescription, the claim of the defendant was neither counterclaim nor set-off. Therefore, when plaintiff dismissed his petition, he had a right to plead the statute as against the claim of the defendant. Section 192, C. O. S. 1921, provides:

"When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense, except as otherwise provided with reference to a counterclaim or set-off."

And we think that that is the applicable rule under the facts shown in this case. The right of the defendant to maintain an action in ejectment to recover his property is barred by the applicable statutes of limitation. When that bar became effective it resulted in the acquisition of title to the property by plaintiff by prescription. That right of the defendant is not available to him either in support of an action in ejectment or as a ground of defense to an action to quiet a title acquired by prescription.

Defendant's contention herein conflicts with another rule, well established in this and other states, to the effect that the right of the owner of real estate in possession thereof to maintain a suit to quiet title thereto is never barred, but continues as long as the cloud remains on the title. Whitehead v. Bunch, 134 Okla. 63, 272 Pac. 878; Warner v. Mason, 109 Okla. 13, 234 Pac. 746; Cooper v. Rhea, 82 Kan. 109, 107 Pac. 799; 29 L. R. A. (N. S.) 930, and note thereto; and Knight v. Alexander, 38 Minn. 384, 37 N. W. 796. Section 274, Id., contemplates rights that may be barred by the statutes of limitation and was never intended to apply to rights that will never be barred.

The case of Nellis v. Minton, 91 Okla. 75, 216 Pac. 147, relied on by defendants, is in no wise in point. There a judgment had been rendered, execution thereunder levied, and the property sold in satisfaction thereof. It was claimed that the sale was void, and in defense thereof it was said that even though the sale was void, the original judgment remained in force and was a lien upon the property and the holder had a lien for taxes paid. It was then contended that that claim was barred by the statute of limitations. The court held that, inasmuch as there was an attack upon the deed, the claim to a lien under the judgment and to a lien for taxes paid remained in force and could be asserted as a counterclaim notwithstanding the provisions of the statute of limitations. We find no fault with that decision in this respect, but it is not at all applicable to the facts as shown by the record in this case. While it is true in that case that one who seeks equity must do equity, there is nothing in it to indicate that one who has a valid title to property acquired by prescription must lose it because he seeks to have his title quieted as against the claims of one who formerly owned the property.

Defendant contends that the land was that of a restricted minor Indian and could only be conveyed under authority of the Act of Congress of May 27, 1908, and for that reason no limitation could be asserted against the right of the defendant to recover the property. The only question involved in this contention is whether or not title to land allotted to a Chickasaw freedman can be acquired by occupancy. The land was not restricted. This court, in Walker v. Hatcher, supra, follows the rule announced by this court with reference to such allotments, which is:

"Where the grantee under a guardian's deed, and those claiming under him, have been in continuous possession of real property since the purchase thereof at a guardian's sale, an action by the ward to recover the property, commenced more than 8 years after the guardian's deed was recorded, and more than 7 years after the termination of the guardianship, and more than 3 years after the ward had reached his majority, is barred by subdivision 2, section 183, and by section 1496, Comp. Stat. 1921, and it is not material whether the guardian's deed was valid, voidable, or void."

There is no merit in this contention.

Defendant contends that the purchaser at at the guardian's sale acquired no title

thereby, but remained in possession under a valid agricultural lease; that no surrender of possession was ever made, and that, therefore, the plaintiff is a lessee in possession and estopped to question the landlord's title, and a tenant at will, which prevents the running of the statute of limitations. No citation of authorities is furnished in support thereof.

There is nothing in this record to support this contention. The agricultural lease was made to Cummings and the guardian's sales were to Cummings' wife. Cummings testified that they did not go on the place under the lease; that they went into possession after they bought it, and thereafter made their home on it; that when he took the lease he intended only to farm the land, and that when his wife bought it, they then moved onto the land and built the house thereon. Plaintiff bought from the Cummings on July 31, 1918, and placed his deed of record on August 5, 1918; immediately he went into possession, and that possession continued to the date of the trial. The suit was filed on January 24, 1924. Under these facts the statute ran while plaintiff was in possession under his recorded deed, and it is immaterial how Cummings entered into possession.

The evidence in this case clearly shows that the possession of the plaintiff under the guardian's deeds, even though they and the probate proceeding were void, was such as to give the plaintiff title to the property by prescription, which title the plaintiff held at the time of the institution of this suit. The defendant sought to destroy that title by showing that the guardian's deeds and guardianship procedure were void. That showing was not sufficient and did not constitute a counterclaim or set-off. When the plaintiff dismissed his action, there was left for consideration by the court the issue made by the claim of the defendants that the guardian's deeds and procedure were void and the answer of the plaintiff thereto that these claims were barred by the statute of limitations. The evidence offered showed that the title to the property was not in the defendant, but was in the plaintiff by prescription. The defendant having no title to the property, could not maintain an action to cancel the guardian's deeds.

The judgment of the trial court is reversed, and the cause is remanded, with directions to enter judgment for the plaintiff against the defendants on the issues raised by the defendant.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. RILEY, J., dissents.