124 105
132 274

124 105
76a 406

124 105
167 518

DAUDT v. KEEN, *Appellant.*

Division One, July 9, 1894.

1. **Quieting Title**: STATUTORY PROCEEDING. A proceeding under the statute to quiet title is purely statutory and possesses none of the features of an equitable suit for that purpose.

2. ——: ——: ISSUES OF FACT. Issues of fact in such statutory proceedings are triable as such issues are in actions at law.

3. ———: ———: PRACTICE: INSTRUCTIONS.  Where a party desires to have the appellate court review the legal theory on which such case is tried, he should ask the necessary instructions or declarations of law.

4. ———: POSSESSION.  The possession of the plaintiff in an action to quiet title must be actual, *bona fide*, and exclusive of the adverse claim.

5. ———: ———.  Such action can not be maintained by one whose possession is obtained by trespass against one whose acts of possession under color of title are as emphatic and notorious as those of plaintiff.

*Appeal from St. Charles Circuit Court.*—HON. W. W. EDWARDS, Judge,

REVERSED.

*C. W. Wilson* and *H. C. Lackland* for appellant.

(1) The statute under which this suit is brought must be equitably construed.  Secs. 2092, 2093.  The plaintiff must come into court with clean hands and a fair case.  (2) Plaintiff's possession was not in good faith, but illegally obtained for the purpose of forcing the burden of proof of title on the defendant.  The court committed error in refusing to give defendant's instruction. *Dyer v. Baumeister*, 87 Mo. 134; *Rutherford v. Uhlman*, 42 Mo. 216; *Campbell v. Allen*, 61 Mo. 581; *Babe v. Phelps*, 65 Mo. 27, 28; *Von Phul v. Penn*, 31 Mo. 335; *Burt v. Warren*, 30 Mo. App. 334; *Webb v. Donaldson*, 60 Mo. 396; *India Wharf v. Central Wharf*, 117 Mass. 504; *Brown v. Matthews*, 117 Mass. 506; *Tompkins v. Wyman*, 116 Mass. 558; *Byrne v. Hinds*, 16 Minn. 521; *Comstock v. Henneberry*, 66 Ill. 212; *Hardin v. Jones*, 86 Ill. 316; *Jackson v. Schoonmaker*, 2 Johns. 234; *Stetson v. Cook*, 39 Mich. 750; *Tichenor v. Knapp*, 6 Ore. 205.  Our statute is copied from the Massachusetts statute, and the decisions cited from that state are therefore binding in this. *Skouten*

*v. Wood*, 57 Mo. 380. (3) The same rule as to the good faith and fairness of the plaintiff's possession applies in action of forcible entry and detainer. *Keen v. Schnedler*, 9 Mo. App. 597; *DeGraw v. Price*, 60 Mo. 56; *Crispin v. Hannovan*, 50 Mo. 536; *Garrison v. Savignac*, 25 Mo. 47; 20 Am. Law Register, 561–570. A scrambling possession is not sufficient. *Dyer v. Reitz*, 14 Mo. App. 46; *Voll v. Butler*, 49 Cal. 74; *Conroy v. Duane*, 45 Cal. 597; 8 Am. and Eng. Encyclopedia of Law, bottom pp. 117 to 123, and authorities there cited. (4) Plaintiff, at the time of instituting this action, could have maintained ejectment against Keen. (5) Any court of justice ought to hesitate and refuse to order a defendant in this sort of a suit to enter upon the stormy and uncertain sea of litigation, unless the plaintiff has the plainest sort of a case and no other remedy. *Dyer v. Baumeister*, 87 Mo. 134; *Rutherford v. Uhlman*, 42 Mo. 216; *Dyer v. Krackauer*, 14 Mo. App. 39; *Wylie v. Waddell*, 52 Mo. App. 226. (6) The court committed reversible errors in the admission of illegal evidence.

*C. Daudt pro se.*

This is a suit at law or rather a statutory suit and not a bill in equity, as contended for by appellant's counsel. Says this court in *City of St. Louis v. Wetzel*, 110 Mo. 264: "Findings of fact by the trial judge we do not review in statutory cases of this kind (being a condemnation proceeding) any more than in ordinary actions at law." This court will, therefore, not weigh the evidence and disturb the verdict of a jury or a court sitting as a jury, unless there is no evidence at all upon which to base it. *Hamilton v. Boggess*, 63 Mo. 233; *Smith v. Flinn*, 78 Mo. 499; *Gaines v. Fender*, 82 Mo. 509; *Baum v. Fryrear*, 85 Mo. 151.

MACFARLANE, J.—The proceeding is under the statute for quieting title. Plaintiff commenced the suit September 17, 1891, and charged in his petition that he was in possession, claiming an estate of freehold of a tract of land fronting six and fifty hundredths chains on the county road and extending, with the same width, south to the Missouri river, and that defendant made some adverse claim thereto.

Defendant, by answer, admitted plaintiff's possession of the north part of said land, extending from the said county road on the north to a slough which crossed the same, the quantity being twenty-six and sixty hundredths acres, but denied plaintiff's possession to any portion of said land south of said slough and between it and the river, but claimed that the land lying between said slough and the river was known as Green island and belonged to him, and was in his possession at the commencement of the suit.

The only issue under the pleading is whether plaintiff had such possession of that part of the land described in his petition which lies between the slough and the Missouri river on the south as entitles him to maintain this statutory proceeding to require the adverse claimant to prosecute a suit for the purpose of testing the validity of his claim.

The land in question was a part of the land known as "the point," and lay between the Missouri and Mississippi rivers above their confluence. A slough known as Green island slough left the Missouri river a mile or so above its junction with the Mississippi, and ran into the latter river a short distance above the junction. The land thus cut off by the slough and lying between it and the river was known as Green island. The quantity of land contained in this island is not given, but from the plat on file it seems to con-

tain two hundred to three hundred acres. A county road runs east and west some ·distance north of the slough to the Mississippi river. To show his claim to the freehold, plaintiff introduced in evidence a deed to himself, describing the land, as hereinbefore stated, as having a front of six and fifty hundredths chains, and extending south, of the same width, to the river. Plaintiff claimed that this deed carried his title across the slough and island.

Defendant claimed the whole island under a deed from one Howff to himself. The evidence showed that in about the year 1884 the said Howff ran a three-wire fence along the south bank of the slough from the Missouri to the Mississippi river, thus inclosing, in that manner, the entire island. Howff also had a house or houses upon the island and some acres of land in cultivation.

Defendant then owned land north of the slough, as did also plaintiff and others. The north bank of the slough was generally known as the main shore and the land south of the slough as Green island. There seems to have been a question among the owners of the land north of the slough, whether, under their title papers, they did not take the title through the island to the present bank of the river. In about 1885 defendant commenced suit against Howff for the possession of the island or a portion of it.

In 1888 the ejectment suit between defendant and Howff was compromised, and Howff conveyed the whole of the island to defendant and the latter was put in possession. Defendant then built a wire fence from the east end of the Howff fence, at the Mississippi river, across to the Missouri river. The Howff fence, never very good, at this time was down at places, and was generally in a dilapidated condition.

In the fall of 1889 plaintiff had a tenant named

Little on his land north of the slough. At that time he made a contract with Little to clear and cultivate land south of the slough, between his possession and the river. In pursuance of this agreement, during the winter of 1889 and 1890, Little cleared a small quantity of land south of and adjoining the bank of the slough, and cultivated it in the summer of 1890, and in the winter of 1890 and 1891 he cleared some more and put it in cultivation in the summer of 1891. The entire quantity cleared was three and sixty-five hundredths acres. During this time plaintiff cut and removed the said wire fence opposite his possession on the north side.

The evidence tended to prove that after defendant got possession of the island he made contracts with persons to clear portions of that land. He testified that he agreed with Little that he could also clear land on the island, and in consideration thereof he could cultivate it for a specified time. This agreement Little denied. Defendant testified that he supposed the clearing made by Little was done under this agreement.

Sometime during Little's occupancy of the land he had cleared defendant "ranked" large quantities of cord wood on each end of the land cleared by Little. These "ranks" of wood were as high as a "man's head on horseback," as described by a witness. There was evidence tending to prove that Little said that he had obtained permission from both parties to clear the land. After defendant learned that the wire had been cut and removed he rebuilt the fence, as he testified.

Each party claimed that he did not know the other was using the land until the fall of 1891. Both parties claimed to be in possession under the facts detailed.

The court found that plaintiff had such possession

of the land cleared by Little, which was found to be three and sixty-five hundredths acres, and ordered the defendant to commence suit to test his alleged title to that part of the land within ninety days. The only instruction asked by defendant was in the nature of a demurrer to the evidence. This was refused. No instructions were asked by plaintiff or given by the court. The trial was without a jury. From the judgment defendant appealed.

I. The first claim is that the finding of the court upon conflicting evidence is conclusive on this court. This proceeding is purely statutory, and possesses none of the characteristics of a common law suit in equity to quiet title. The only issue made by the pleadings was whether plaintiff had, at the time he instituted the suit, such possession as entitled him to maintain the suit. Issues of fact in such statutory proceedings are triable as such issues in actions at law. If the parties desire to have the legal theory upon which the trial court acted reviewed by an appellate court, instructions or declarations of law should have been asked. Such has been the practice, as will be seen by an examination of the reported cases. *Campbell v. Allen*, 61 Mo. 582; *Dyer v. Baumeister*, 87 Mo. 136; R. S. 1889, sec. 2188.

In such case "the finding as to the facts on conflicting evidence is binding upon the court. We must look to the instructions given and the verdict or finding of the court, to see how the disputed questions of fact were resolved, and to the instructions given and refused, to see upon what theory of law the cause was tried," the same as in other law cases. *Mead v. Spalding*, 94 Mo. 47, and cases cited. It is held that in statutory proceedings for condemnation of land the finding of facts by the trial judge will not be reviewed any more than in any ordinary actions at law. *St. Louis v.*

*Wetzel*, 110 Mo. 264.   No more can they in this proceeding.

We can, therefore, only review the finding of the court to ascertain if they are consistent with the law upon the undisputed facts.   The demurrer offered at the conclusion of the evidence questioned its sufficiency to justify the judgment.

II.   The proceeding is only preliminary to a suit which may be required to be brought by the opposite party.   The remedy is given to the one in possession of the land on the theory that he has no other remedy. The right of action is therefore "bottomed" upon the possession of petitioner.   The possession must be actual, *bona fide*, and exclusive of the adverse claimant.   It is not sufficient that it be merely nominal, or be "obtained under circumstances tending to show a trespass, and with the sole object of instituting the proceeding in order to shift the burden of establishing title from their own shoulders onto the defendants." *Dyer v. Baumeister, supra.*

Our statute is a substantial transcript of the General Statutes of Massachusetts [Ed. 1873], chapter 134, section 49.   The supreme court of that state in construing the statute (*India Wharf v. Central Wharf,* 117 Mass. 504), says "the petitioner must have substantially and practically the exclusive possession.   It is not sufficient that he has a mere formal or nominal possession, which he can without disadvantage abandon and himself bring an action against the adverse claimant.   Nor is it sufficient that he might be treated as a disseisor at the election of the latter; for any person asserting a title to land may be so treated at the election of the rightful owner; and to give such a construction to the statute would be to enable any wrongful claimant to throw upon the rightful owner the burden of establishing his

title. The petitioner must prove that he has the exclusive possession, as between himself and the respondent. If, as between them, the possession appears to be mixed or doubtful, the petitioner has not made out a case for compelling the respondent, rather than himself, to institute an action to try the title. *Munroe v. Ward*, 4 'Allen, 150; *Clouston v. Shearer*, 99 Mass. 209; *Tompkins v. Wyman*, 116 Mass. 558.''

In view of the purposes of the statute, the foregoing expression of GRAY, C. J., seem fully warranted and eminently just and proper. No one should have the right to the benefits of the statute, unless he place himself within its terms and intent. It was never designed to give one claimant an advantage over another, but was merely intended to create a remedy for one, in the *bona fide* possession, against an adverse claimant who is unwilling or neglects to test his rights.

Now, the fact is undisputed that, at the time this proceeding was commenced, defendant had a large quantity of cord wood piled upon the land that had been cleared by plaintiff's tenant, Little. How long it had been there does not definitely appear. At the same time plaintiff's tenant was cultivating the remainder of the cleared land. At the time, then, of the commencement of the suit the parties had a joint or conflicting possession of the land, one but slightly interfering with the use made of it by the other. Taking the condition at the time the suit was brought plaintiff had the same right to sue defendant for possession as defendant had to sue him. Neither had such exclusive possession as entitled him to resort to the statute. Either had an ample remedy independent of the statute. But each claims that the other had no lawful possession but only such as was obtained by trespass and wrong.

The evidence shows, without conflict, that prior to 1888 the entire island was inclosed by Howff under color and claim of title. Defendant acquired Howff's title and possession in 1888. While the fence may have been inadequate to turn stock, as the evidence tends to prove, we think it was sufficient to clearly mark the boundaries of the possession claimed. Plaintiff evidently took the same view, for, in the fall of 1889, he cut and removed the fence opposite to his land on the north side of the slough, and put his tenant Little in possession, or rather authorized him to go upon the land and clear it. The island was covered with timber, and defendant did not live in the neighborhood. He had other tenants on the island clearing off the timber. He supposed Little was also clearing for him. In the two winters Little was at work, he cleared less than four acres.

There is no doubt that plaintiff acquired his possession in the first place by a trespass and wrong, and, though that possession was acquired more than two years before this suit was commenced, the time, in the circumstances, did not make his possession lawful. The possession was all the time within defendant's inclosure, was without defendant's knowledge, and was during the entire time claimed by him also.

Defendant's acts of possession were as emphatic and notorious as those of plaintiff and the latter, at the time this suit was commenced, had the undoubted right to commence an action against defendant for possession.

The burden was on the plaintiff to prove his actual, exclusive and *bona fide* possession and this we think he wholly failed to do.

Judgment reversed and plaintiff's petition dismissed. All concur.